**Frieda Gust SAVARD, Individually and as Administratrix, et al., Plaintiffs,**

v.

**MARINE CONTRACTING, INC., and Perini Corporation, Defendants.**

**Civ. No. 12158.**

United States District Court
D. Connecticut.

Jan. 16, 1969.

Morgan P. Ames, of Cummings & Lockwood, Stamford, Conn., for plaintiffs.

Hans C. F. Wriedt, of Goldstein & Peck, Bridgeport, Conn., for defendant Marine Contracting, Inc.

David C. Hadden, of Pouzzner & Hadden, New Haven, Conn., for defendant Perini Corporation.

TIMBERS, Chief Judge.

## STATEMENT OF FACTS

On September 23, 1966, decedent, an employee of defendant Marine Contracting, Inc. (Marine) was engaged in diving operations on the barge "Choctaw" for defendant Perini Corporation (Perini). The barge was anchored in the navigable waters of the United States in Narragansett Bay, within the territorial waters of the State of Rhode Island. During the course of a dive, decedent was killed.

This action was commenced by decedent's widow (as administratrix and as an individual) and children, seeking recovery under the Jones Act, 46 U.S.C. § 688 et seq., the general maritime and civil laws of the United States (jurisdiction apparently being premised upon 28 U.S.C. § 1333(1) and 28 U.S.C. § 1332

(a)), and the Death By Wrongful Act statute of Rhode Island.[1]

Each defendant has now moved, pursuant to Rule 12(b) (6), Fed.R.Civ.P., to dismiss certain parts of the complaint.

## NON-MARITIME CLAIMS

Defendants, as well as the Court, have encountered some difficulty in discerning from the complaint the various theories upon which plaintiffs rely, and the corresponding factual allegations supporting these theories. In order to make its determination of these motions intelligible, the Court will consider plaintiffs' complaint as alleging two distinct, and often inconsistent, theories—one maritime and the other non-maritime. As to the latter "claim", the motions of both defendants are in all respects denied, except that the claim for conscious pain and suffering is dismissed in its entirety. See discussion, infra.

Plaintiffs have attempted to protect themselves against a possible finding that decedent was not a seaman within the meaning of the Jones Act. Should such finding be made, the complexion of the case would shift from one within the unique statutory framework of seamen's maritime claims to one within which plaintiffs might assume a status comparable to that of civil litigants in an ordinary negligence action. Since this result is conceivable, Marine's motion to dismiss, addressed in large part toward plaintiffs' failure to observe the unique statutory requirements of the Jones Act and related maritime laws, must be denied. In accordance with this ruling, the Court orders plaintiffs within 20 days to amend their complaint to state in separate counts their independent "non-maritime" claims for relief.

The Court will now proceed to consider the motions of each defendant addressed to plaintiffs' maritime claims.

## MARITIME CLAIMS

(A) As to Marine Contracting, Inc.

*(1) Inapplicability of the General Maritime Laws of the United States.*

During the hearing on these motions on December 16, 1968, Marine's counsel stated that if the Jones Act were not applicable, decedent's sole recourse against it, as decedent's employer, would be under the Longshoremen's and Harbor Workers' Compensation Act (hereinafter, Longshoremen's Act), 33 U.S.C. § 901, et seq. Under § 905 of the Longshoremen's Act, employees have lost the right independently to recover damages where employer negligence caused the injury; they must seek redress, if at all, under the Act. The relationship of the Longshoremen's Act to the Jones Act is that the former covers all maritime workers except members of the crew and masters, while the latter covers these two categories. Bodden v. Coordinated Caribbean Transport, Inc., 369 F.2d 273 (5 Cir. 1966). The two Acts appear to be mutually exclusive. Swanson v. Marra Bros., 328 U.S. 1, 7 (1946).

The exclusivity provision of § 905 of the Longshoremen's Act does not bar actions by maritime workers[2] against employers who are also shipowners. See Jackson v. Lykes Bros. S.S. Co., Inc., 386 U.S. 731 (1967), following Reed v. The Yaka, 373 U.S. 410 (1963). See also Scopaz v. S.S. Santa Luisa, 372 F.2d 403 (2 Cir.), cert. denied, 387 U.S. 922 (1967). However, *Jackson* did not nullify the effect of the exclusivity provision of § 905 when the defendant employer is not the owner or lacks other operational interest in the vessel involved in the litigation. See Watson v. Gulf Stevedore Corp., 374 F.2d 946 (5 Cir.), cert. denied, 389 U.S. 927 (1967). Although a maritime worker can sue a vessel owner in personam

---

1. Gen.Laws of R.I., §§ 10–7–1, 2 (Supp. 1967).

2. As its title would indicate, the Longshoremen's Act has been applied mostly in cases involving longshoremen. The Court, in the context of this case, when discussing the Longshoremen's Act will refer to "maritime workers", excluding members of the crew under 33 U.S.C. § 902(3).

or the vessel in rem for injuries caused by the vessel's unseaworthiness, and such owner can seek indemnification against the worker's employer for breach of its warranty of workmanlike service, the maritime worker cannot subrogate himself to the owner's rights in a direct action against the employer. Instead, he must pursue his remedy, as against his employer, solely under the Longshoremen's Act. *Watson,* supra.

█ Marine has not attempted to demonstrate that its status was solely that of an employer (without any degree of ownership or operational interest in the vessel), so as to come within the exclusivity interrelationship of the Jones Act and the Longshoremen's Act. In paragraph 4 of their complaint, plaintiffs allege that Perini "had chartered [the barge] to defendant Marine Contracting, Inc., and defendants jointly and severally were in possession, custody, . . . control, operation and management of the diving barge Choctaw." This allegation remains uncontroverted. If plaintiffs can establish the requisite charterer's interest in Marine, then, assuming the inapplicability of the Jones Act, they would not be barred by § 905 of the Longshoremen's Act from pursuing a claim against Marine as employer-owner under general maritime law. Since this ownership interest cannot be determined on the present state of the record, Marine's motion to dismiss the general maritime claim for relief must be denied.

*(2) Inapplicability of the Rhode Island Death By Wrongful Act Statute.*

██ The Jones Act provides an exclusive right of action against an employer for the death of a seaman (member of the crew) killed in the course of his employment. Gillespie v. United States Steel Corp., 379 U.S. 148 (1964), following Lindgren v. United States, 281 U.S. 38 (1930). Notwithstanding the fact that plaintiffs, if it is demonstrated that decedent and Perini were not in an employment relation (as contended by Perini), could proceed against Perini under the Rhode Island Death By Wrongful Act statute as incorporated by general maritime law, Kenney v. Trinidad Corp., 349 F.2d 832, 834 (5 Cir. 1965), cert. denied, 382 U.S. 1030 (1966), the presence of an undisputed employment relationship between decedent and Marine requires dismissal of the Rhode Island wrongful death claim against Marine.

█ Death on a ship in navigable waters, although within a state's territorial waters, "is a maritime tort, a type of action which the Constitution has placed under the national power to control in its substantive . . . features . . . ." Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409 (1953). Asserting that the action is one based upon diversity of citizenship does not affect this conclusion. Id., at 410–11.

Only insofar as plaintiffs are asserting that Savard was not a Jones Act seaman would their arguments be sound, since in that event the unique statutory framework becomes irrelevant.[3]

█ The Jones Act, and the Death On The High Seas Act, 46 U.S.C. § 761 et seq., provide federal statutory wrongful death remedies. Beyond that seamen cannot go, even under the doctrine of unseaworthiness. See the excellent discussion of wrongful death in unsea-

---

3. See The Tungus v. Skovgaard, 358 U.S. 588, 591 (1959):

"Skovgaard was not a seaman, and his death occurred upon the territorial waters of New Jersey. The respondent's rights in this suit depended entirely, therefore, upon the New Jersey wrongful death statute, and the long-settled doctrine that 'where death . . .

results from a maritime tort committed on navigable waters within a State whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel *in personam* for the damages sustained by those to whom such right is given.' Western Fuel Co. v. Garcia, 257 U.S. 233, 242."

worthiness litigation, Burns v. Marine Transport Lines, Inc., 207 F.Supp. 276, 280–83 (S.D.N.Y.1962).

In short, under the *non-maritime* count, Marine's motion to dismiss the reference to the Rhode Island statute is denied; in relation to plaintiffs' *maritime* claim, the allegations concerning Rhode Island law are ordered dismissed.[4]

### (3) Inapplicability of Claim for Pain and Suffering.

■ Marine has made various, and apparently unrelated, claims relying upon the alleged exclusiveness of the Jones Act remedy and ignoring the possibility recognized throughout this opinion that plaintiffs may be unable to fulfill the Jones Act's statutory prerequisites and thus may be relegated to an action under an alternative maritime or non-maritime theory. However, Marine is correct in asserting that under both the general maritime claim of unseaworthiness and in the non-maritime context under the Rhode Island Death By Wrongful Act statute, a cause of action for pain and suffering does not survive. Lopez v. Pan Atlantic Cia Naviera, 247 F.Supp. 281 (D.R.I.1965), and cases cited therein. Thus, the claim for damages based upon pain and suffering is ordered dismissed.

### (4) Lack of Capacity of Certain Plaintiffs to Prosecute.

■ As to the Jones Act claim, the complaint should be amended so as to eliminate the statutory beneficiaries as plaintiffs and retain only decedent's widow in her capacity as his personal representative. Civil v. Waterman S.S. Corp., 217 F.2d 94, 98 (2 Cir. 1954). See 45 U.S.C. §§ 51 and 59. In the count for non-maritime relief, all present plaintiffs may continue as parties.

### (5) Inapplicability of Claim for Loss of Love, Consortium and Care.

■ While it is clearly established that the Jones Act does not provide recovery for loss of consortium, Igneri v. Cie de Transports Oceaniques, 323 F.2d 257 (2 Cir. 1963), cert. denied, 336 U.S. 949 (1964), and the measure of damages is the actual pecuniary loss sustained by plaintiffs, Michigan Central R.R. v. Vreeland, 227 U.S. 59 (1913), no authority has been cited for the non-Jones Act aspects of this litigation. Therefore, as to the Jones Act count only, Mrs. Savard's claim for loss of consortium is dismissed. However, under all aspects of the litigation, dismissal of the claims for loss of paternal guidance and advice is denied. Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583, 593 & n. 9(a) (2 Cir. 1961), cert. denied, 368 U.S. 989 (1962). In all other respects, Marine's motion on the instant grounds is denied.

### (6) Independence of Plaintiff William Albert Savard.

■ William Albert Savard, at the time of his father's death, was under 21. In paragraph 16 of the complaint he is excluded from the class of children of decedent, "all of whom were and are totally dependent." From such exclusion, it does not follow, as Marine urges, that he was not dependent in any manner upon decedent at the time of his death. In Bailey v. Baltimore Mail S. S. Co., 43 F.Supp. 243 (S.D.N.Y. 1943), "the testimony on file" revealed that the brother and sister of the decedent were not dependent upon him. That case is wholly distinguishable from the instant case wherein Marine is relying upon language in the complaint which, even if binding on plaintiffs, only resolves the issue of *total* dependence and not de-

---

4. Marine's motion relative to the Rhode Island Safe Place to Work Act (unreported) is disposed of in accordance with the above ruling on the Death By Wrongful Act statute.

pendence per se within the meaning of the Jones Act. In addition, it may be that the standard of dependency is inappropriate, and the test will be one involving the reasonable likelihood of financial contribution in the future. Davis v. Parkhill-Goodloe Co., Inc., 302 F.2d 489 (5 Cir. 1962). Marine's motion to dismiss as to plaintiff William Savard accordingly is denied.

**(B) As To Perini Corporation**

 Defendant Perini bases its motion to dismiss on the alleged inapplicability of the Jones Act aspects of the complaint, alleging that decedent was not a seaman within the meaning of the Act, that the barge was not "in navigation", and that there was no employer-employee relationship between it and decedent. In part, Perini's contentions may be answered by citation to Offshore Co. v. Robinson, 266 F.2d 769, 779–80 (5 Cir. 1959):

> "Attempts to fix unvarying meanings have (sic) a firm legal significance to such terms as 'seamen', 'vessel', 'member of a crew' must come to grief on the facts. These terms have such a wide variety of meaning, under the Jones Act as interpreted in the courts, that, except in rare cases only a jury or trier of facts can determine their application in the circumstances of a particular case."

*Offshore* recognized the contemporary trend of liberally construing the requirements of the Jones Act; the plaintiff was an oil worker on a mobile drilling platform resting firmly on the bottom of the Gulf of Mexico. See also Boatel, Inc. v. Delamore, 379 F.2d 850, 857–59 (5 Cir. 1967); Creel v. The Jack Cleverly, 264 F.Supp. 98, 101 (W.D.La. 1966).

In the instant case, on the record before the Court, it is impossible to determine whether the Choctaw was "in navigation" as the term has been construed by the courts. See, e.g. Hill v. Diamond, 311 F.2d 789 (4 Cir. 1962):

> "It is well established that many special purpose craft, such as dredges, floating derricks and barges equipped for special purposes or operations are vessels within the meaning of the Jones Act and that persons regularly employed aboard such a vessel in aid of its purposes are seamen." (footnotes omitted)

Although *Hill* affirmed the holding below that, as a matter of law, a tunnel section was not a vessel in navigation, the court nevertheless recognized that "there are close cases in which the status of the vessel, itself, may depend upon the view which the finder of facts takes of the evidentiary facts." 311 F.2d at 793. In this light the Court cannot as a matter of law say that a diving barge anchored in navigable waters is not a vessel in navigation within the meaning of the Jones Act. Cf. Johnson v. Noble Drilling Co., 264 F.Supp. 104, 106 (W.D. La. 1966); Simmons v. Baxter Drilling, Inc., 239 F.Supp. 348 (W.D.La. 1965).

 Perini's final claim that there was an absence of an employer-employee relationship between decedent and Perini raises similar problems. In Williamson v. Dapsit Bros. Marine Divers, Inc., 337 F.2d 337 (5 Cir. 1964), the issue of decedent's status as an employee was also in controversy. Judge Moore, sitting by designation on the Court of Appeals for the Fifth Circuit, listed the requirements of a Jones Act recovery as establishing (1) that decedent was employed by defendant (2) that he was employed as a seaman on a vessel owned or operated by the employer and over which the employer had command and (3) that defendant or the one for whom he was responsible was guilty of the negligence proximately causing his death. 337 F.2d at 339. Judge Moore held that these were for determination by the jury under appropriate instructions. The question of decedent's employment status is not one which can be resolved on a

**1178**

motion to dismiss on the present record. Accordingly, Perini's motion to dismiss the Jones Act claim is denied.

### MARINE'S MOTION TO STRIKE

The motion of Marine, pursuant to Rule 12(f), Fed.R.Civ.P., to strike the reference in the complaint to res ipsa loquitur is denied.

### SUMMARY OF ORDERS

I. Motion To Dismiss: Marine Contracting, Inc.

(A) Insofar as plaintiffs seek recovery on a non-maritime theory, Marine's motions to dismiss are in all respects denied (with the exception of the claim for pain and suffering, as to which the motion to dismiss is granted).

(B) Insofar as plaintiffs seek recovery on a maritime theory, Marine's motion to dismiss

(1) the claim for relief under the general maritime laws, is denied;

(2) the claim for relief under the Rhode Island Death By Wrongful Act statute, is granted;

(3) the claim for relief under the doctrine of unseaworthiness, is denied, except that dismissal of the claim for damages for pain and suffering is granted;

(4) the action as to certain named plaintiffs, is granted;

(5) the claim for damage for loss of consortium only, is granted, but in all other respects the motion on the grounds here asserted is denied;

(6) the claim for relief on behalf of William Albert Savard, is denied.

II. Motion To Dismiss: Perini Corporation

Perini's motion to dismiss is in all respects denied.

III. Motion To Strike: Marine Contracting, Inc.

Marine's motion to strike reference to res ipsa loquitur is denied.