Mrs. Bertha **ALFRED**, widow of Harold Harang, Appellant,

v.

**MV MARGARET LYKES**, her engines, tackle, apparel and furniture, et al., Appellees.

No. 24566.

United States Court of Appeals Fifth Circuit.

July 16, 1968.

Marvin C. Grodsky, New Orleans, La., for appellant.

Donald L. King, Edward S. Bagley, New Orleans, La., for appellees.

Before COLEMAN and CLAYTON, Circuit Judges, and JOHNSON, District Judge.

PER CURIAM:

This action by the personal representative of Harold Harang, deceased, for damages for his death began as an inpersonam libel against Avondale Ship-

yards, Inc., and as an in rem action against the MV Margaret Lykes.

Avondale filed exceptions, a motion to dismiss and a motion for summary judgment upon the basis that the exclusive remedy against it was under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 905).

Lykes Brothers Steamship Company, Inc., as claimant of the MV Margaret Lykes, filed an answer and a motion for summary judgment which in its amended final form encompassed the grounds that the structure which became the MV Margaret Lykes was not a vessel in navigation at the time, that no wrongful death claim survives under general maritime law or in rem under Louisiana law and that the aforementioned structure owed no duty of seaworthiness to the decedent.[1] Both of these motions for summary judgment were sustained, and disposition in district court was made accordingly. Libelant appeals here.

None of the relevant facts are in dispute. Lykes Brothers Steamship Company was the owner of the vessel with which we are concerned.[2] Lykes had contracted with Avondale for the construction of a vessel which afterward became the MV Margaret Lykes. Harang, the deceased, was an employee of Avondale, working on this structure as a painter when he died on November 13, 1963, by being fatally burned in an explosion and fire which occurred in a tank or hold where he was working. At that time, the vessel had not been completed, although it had been launched and was afloat. Substantial work yet needed to be done by Avondale before this vessel could be inspected, registered and commissioned. A temporary certificate of inspection was issued by the United States Coast Guard but not until almost six weeks after Harang died—December 26, 1963. The hull was registered and commissioned December 27, 1963, and the vessel commenced her first voyage on January 4, 1964.

■ The short answer with respect to appellant's claims against Avondale is that an employee of a shipbuilding company may not maintain a tort action against his employer for an injury sustained on a vessel afloat, where the vessel has been launched, but not fully completed or commissioned. Frankel v. Bethlehem-Fairfield Shipyard, Inc., 132 F.2d 634 (4 Cir. 1942), cert. den. 319 U.S. 746, 63 S.Ct. 1030, 87 L.Ed. 1702. See also, General Engine and Machine Works, Inc. v. Slay, 222 F.Supp. 745 (S.D.Ala. 1963), and Hill v. Diamond, 311 F.2d 789 (4 Cir. 1962). Some of the language from *Frankel* is applicable here. Inter alia, the court stated:

> In the first place, a contract to build a vessel is nonmaritime in nature. Robinson on Admiralty (1939), 162–165; People's Ferry Co. v. Beers, 20 How. 393, 15 L.Ed. 961. As stated by the Supreme Court:
>
> "Under decisions of this court the settled rule is that a contract for the complete construction of a ship or supplying materials therefor is nonmaritime, and not within the admiralty jurisdiction." Thames Towboat Co. v. The Francis McDonald, 254 U.S. 242, 243, 41 S.Ct. 65, 66, 65 L.Ed. 245.
>
> \*    \*    \*    \*    \*    \*
>
> Accordingly, since a contract for the building of a ship is nonmaritime in character, a tort arising out of work on a launched but incompleted vessel also lacks maritime flavor, despite the fact that the vessel is lying in navigable waters. Furthermore, an in-

---

1. The libel was later amended to assert the same claim in personam against Lykes. But no ruling of the district court on that aspect is before us on this appeal. Appellant so states in brief and so stated on oral argument.

2. Appellant's argument that there is a question in this regard is specious. The Lykes' answer under oath unequivocally states that it was the owner at the time of the incident which is at issue. Avondale answered an interrogatory under oath stating that Lykes was the owner. There is no other evidence of ownership in the record.

completed vessel has yet to take her place in commerce and navigation; whereas a vessel which has been commissioned and taken into navigation and commerce remains in that status even when coming into a dock and undergoing certain repairs.

For these reasons, we do not feel that the plaintiff was a seaman within the meaning of the Jones Act, since he was not a member of the crew and his duties had no direct relation to navigation. He was merely working on an incompleted structure which was being erected under a nonmaritime contract.
* * *

 There is another aspect of appellant's claim against Avondale which, in effect, is the same as her claim against Lykes. Appellant urges that Avondale was either the owner or owner pro hac vice of the vessel, seeking to invoke the doctrine of Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). Accepting, arguendo, this claim, we consider it in the same light as the claim here asserted against Lykes. Neither The Yaka nor its lineal ancestor, Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), do good service to appellant here. They are inapposite. Each one of those cases dealt with situations which arose with respect to a completed, commissioned vessel in service in navigation. The warranty of seaworthiness extends to a shore-based worker (such as was Harang) only at a time when the vessel is ready for sea. United N. Y. and N. J. Sandy Hook Pilots Association v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed. 2d 541 (1959), and West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959).[3] Thus, as against Avondale and as against Lykes, this appeal is without merit. Appellant's exclusive remedy

with respect to Avondale is under the Longshoremen's and Harbor Workers' Compensation Act, supra, and she has no remedy against the MV Margaret Lykes or her claimant (owner), Lykes, in these in rem proceedings.[4]

The disposition made of the claims submitted to the district court was right, and its action should be, and is affirmed.

---

3. See also, Jackson v. Lykes Bros. Steamship Co., 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967), and Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). They also dealt with completed, commissioned vessels in service in navigation. Both Jackson and Hawn were held to be doing work traditionally that of a seaman.

4. Having reached our stated conclusions, we need not deal with other issues tendered and briefed.